THE STATE ex rel. C. G. GILMAN et al. v. W. R. ROBERTSON et al., Judges of Springfield Court of Appeals.

In Banc, April 2, 1915.

1. REVIEW OF ERROR OF COURT OF APPEALS: Certiorari. The Supreme Court has power to review upon *certiorari* errors (not the jurisdiction) of a Court of Appeals. It has power by such writ to quash the opinion of a Court of Appeals in a case over which it has appellate jurisdiction, in which that court has failed to follow the last previous ruling of the Supreme Court in "any question of law or equity."

2. ———: ———: Matters of Jurisdiction and Error.  Section 3 of article 6 of the Constitution, declaring that "the Supreme Court shall have a general superintending control over all inferior courts" and "shall have power to issue writs of *habeas corpus*, mandamus, *quo warranto, certiorari* and other original remedial writs, and to hear and determine the same," and section 6 of the Amendment of 1884, declaring that "the last previous rulings of the Supreme Court on any question of law or equity shall, in all cases, be controlling authority in said Courts of Appeals" and section 8 of said amendment, declaring "the Supreme Court shall have superintending control over the Courts of Appeals by mandamus, prohibition and *certiorari*," should all be read together and considered as rounding out the judicial system created by the Constitution, of which it clearly makes the Supreme Court the head; and under them, if a Court of Appeals refuses to assume its constitutional jurisdiction, the Supreme Court by mandamus can compel it to exercise it; if it exceeds its constitutional jurisdiction, the Supreme Court by its writ of prohibition can restrain and confine it within its jurisdictional lines; and if it refuses to follow "the last previous rulings of the Supreme Court," which in effect would be to transgress the lines of its constitutional jurisdiction, that court by its writ of *certiorari* can quash its record (including its opinion, which is a part of its record). A refusal to follow the last previous rulings of the Supreme Court is not a mere matter of error, but in its essence and effect is to exceed its jurisdiction, for which *certiorari* is an appropriate remedy.

*Held*, by BOND, J., dissenting, that the Supreme Court cannot by its writ of *certiorari* quash the record (including the opinion) of a Court of Appeals on the ground that its decision is in conflict with the last previous ruling of the Supreme Court; that the writ cannot be used as a substitute for an appeal or writ of error, and the Constitution vests in a Court of Appeals jurisdiction in certain cases, and makes its decision therein final; that jurisdiction means power to decide, and power to decide includes power to determine whether or not its decision is in conflict with the last previous rulings of the Supreme Court; and it would be illogical and contradictory to rule that the Supreme Court has power by *certiorari* to quash the opinion of a Court of Appeals when it is in conflict with the last previous rulings of the Supreme Court and not power to quash such opinion when no such conflict exists; and section 6 of the Amendment of 1884 clearly gives to the judges of a Court of Appeals power to determine whether or not its decision is in conflict with the last previous decision of the Supreme Court, or of a decision of another Court of Appeals, and if they or any judge of said court, conceive there is such conflict, the case is required to be certified to the Supreme Court, but if they are of the opinion no such conflict exists it is mere error in decision, and does not impair their constitutional jurisdiction to make a final decision in the case.

3. ———: ———: **Untimely Filing of Transcript: Duty of Clerk.** It is not the duty of the clerk of the trial court to file in the proper Court of Appeals a certified copy of the judgment and order of appeal in a case falling within its jurisdiction, but that duty rests upon appellant; and if it is not filed within the time prescribed by the statute, said appellate court is authorized to affirm or dismiss, and such action is not in conflict with the last previous ruling of the Supreme Court, and will not be disturbed by writ of *certiorari*.

### *Certiorari.*

WRIT QUASHED.

*M. R. Lively* for relators.

(1)   *Certiorari* is proper procedure.   State v. Smith, 176 Mo. 90; State ex rel. v. Edwards, 104 Mo. 125; State ex rel. v. Shelton, 154 Mo. 670; State ex rel. v. Guinnotte, 156 Mo. 513; State ex rel. v. Broaddus, 238 Mo. 189; Curtis v. Sexton, 252 Mo. 221.   The peti-

tion is sufficient in all of its allegations. *Certiorari* is proper procedure and writ will be granted where exigencies of the case are such that a total or partial failure of justice may result. State ex rel. v. Guinnotte, 156 Mo. 513. *Certiorari* is properly granted in all cases where an inferior tribunal is alleged to have exceeded its proper jurisdiction, or is otherwise acting illegally, where there is no plain, speedy and adequate remedy. State ex rel. v. Guinnotte, 156 Mo. 513; Witherall v. Shupe, 109 Pa. St. 391; Bob v. State, 2 Yeager, 176. The petition contains every allegation necessary to authorize the relief prayed for; and the adjudication by this court of all matters complained of. Railroad v. Smith, 154 Mo. 308. Writ of error will not lie from affirmance of judgment of circuit court for failure to prosecute appeal; the judgment is final. Brummitt v. Phillips, 79 Mo. App. 116. (2) Motion to continue was timely; the judge's certificate sufficient. It was mandatory on the court to continue the cause. The court had jurisdiction for that purpose; continuance was denied. The proceeding was illegal; in excess of jurisdiction, and an unlawful exercise of jurisdiction; and in conflict with an express statute of this State, to-wit, section 2029, Laws 1911, and in conflict with decisions of this court in Curtis v. Sexton, 252 Mo. 221; State ex rel. v. Broaddus, 238 Mo. 189. Section 2029, Laws 1911, provides, that "if for any reason the bill of exceptions cannot be allowed and filed within the time above provided, then the judge before whom said cause was tried shall certify in writing such fact to the appellate court in which the appeal is pending, and such appellate court shall re-set or continue such case for a sufficient time in which to enable said bill of exceptions to be allowed and filed," and further "hereafter no case, now or hereafter pending in any appellate court, shall be affirmed for failure to file bill of exceptions within the time allowed by the trial court, but such case may be affirmed for failure to file bill of ex-

ceptions within the time in this section provided if error do not appear in the record of the case.'' The case at issue is clearly within this section of the statute, and the action of the court was in violation of that statute. (3) Respondent's motion to affirm judgment of the circuit court, filed in the Springfield Court of appeals, does not state facts sufficient to authorize an affirmance of the judgment under Sec. 2029, Laws 1911; and the order affirming the judgment on the motion filed is in conflict with said statute, and in conflict with Curtis v. Sexton, 252 Mo. 221. Respondent's motion to affirm does not state facts sufficient to authorize the affirmance of the judgment under Sec. 2047, R. S. 1909, for the reason the petition and the records show that respondent in the Springfield Court of Appeals did not produce in court the certificate of the clerk of the court in which the appeal was granted, stating therein the title of the cause, the date and amount of the judgment appealed from, against whom the same was rendered, the name of the party in whose favor the appeal was granted, and the time when the appeal was granted, as a basis for such motion; and said motion did not allege that the clerk had notified appellants or their attorney of record of the completion of the transcript in time to have enabled them to have the same filed in the appellate court at an earlier date, and the respondents, by making an order affirming said judgment on said motion, proceeded illegally, in excess of jurisdiction, and an unlawful exercise of jurisdiction, and in violation of said section 2047; and in conflict with the decisions of this court in Estey v. Post, 76 Mo. 412; Caldwell v. Hawkins, 46 Mo. 263; Land & Inv. Co. v. Martin, 125 Mo. 117; and said action was in violation of Sec. 2029, Laws 1911. (4) The proceedings of the respondents in affirming said judgment is in violation of Sec. 2047, R. S. 1909, for the reason the motion does not allege that the clerk of the circuit court notified appellants, or their attorney of record of the

completion of the transcript at any time, which must be alleged and affirmatively shown by the motion. Said section provides: ''And the court shall affirm the judgment unless good cause to the contrary be shown; and the failure of the clerk to notify the appellants, or his attorney of record, of the completion of the transcript in time to enable him to have the same filed in the appellate court in the time required by law, shall be considered and is hereby declared to be good cause for refusing to affirm the judgment of the lower court on such motion.'' The statute is mandatory on the clerk to notify appellants, or their attorney of record, of the completion of the transcript; and mandatory on the court to overrule the motion to affirm for failure to prosecute with diligence as alleged in this motion, unless the motion affirmatively shows notice by the clerk; and the clerk has not discharged his official duty until notice is served; and the statute does not leave that question to the discretion of the court; and said proceeding was in conflict with Sec. 2047, R. S. 1909, for that reason; and in conflict with Dare v. Smith, 59 Mo. App. 52; and Land & Inv. Co. v. Martin, 125 Mo. 117. (5) Sec. 2053, R. S. 1909, is mandatory on the clerk ''to without delay make out and send to the clerk of the appellate court a short form of transcript.'' He cannot wait for appellants' order. Appellants can only order a complete transcript of the record. This statute becomes operative and in effect as soon as an appeal is granted. The failure of the clerk to discharge his statutory duty will not defeat an appeal; and appellants will not be in default or guilty of negligence in prosecuting their appeal by reason of the clerk's failure to discharge his statutory duty, as in this case. The petition alleges, and the record shows, the appellants were diligent in having the transcript filed promptly when made out by the clerk. It was made September 21, 1914; filed September 22, 1914, and the same was in time and constituted dili-

gence as a matter of law. The petition alleges, and the record shows, appellants made an order on the clerk June 3, 1914, to make out a short form of transcript in said cause. But the statute demanded that without order. The order could not effect the clerk's duty under the statute, and would not cause the clerk to act and discharge his statutory duty under said section. Section 2047, as amended in 1891, by adding the clause, "and the failure of the clerk to notify the appellant, or his attorney of record, of the completion of the transcript in time to enable him to have the same filed in the appellate court in the time required by law, shall be considered and is hereby declared to be good cause for refusing to affirm the judgment of the lower court on such motion" makes it the official duty of the clerk to notify appellants, or their attorney of record, when the transcript is made out and sent to the appellate court. The motion does not allege such notice. The petition alleges, and the record shows, the clerk did not notify appellants, or their attorney, and discharge his official and statutory duty. The clerk's duty would then have been discharged, but not until then. Sec. 2047, R. S. 1909; Dare v. Smith, 59 Mo. App. 52; Land & Investment Co. v. Martin, 125 Mo. 117. (6) Sec. 2048, R. S. 1909 provides "the appellant shall cause to be filed in the office of the appellate court in cases of appeals, fifteen days before the first day of the term of such court, a perfect transcript, or in lieu thereof, a certified copy of the record entries, etc., with order granting appeal." Relators could act under this statute and cause a transcript to be filed only after the clerk had made out same. But if the clerk failed to discharge his duty, as provided in Sec. 2053, R. S. 1909, and failed to make out such transcript, short form or complete, appellant could not cause it to be filed in the office of the appellate court; and the appellants or their attorney of record could not know that such transcript, short form or complete, had been made out until noti-

fied by the clerk of such fact, as required by Sec. 2047, R. S. 1909.

*R. A. Mooneyham* and *Frank L. Forlow* for respondents; *W. M. Williams, Kendall B. Randolph, E. P. Garnett, Atwood & Hill* and *Park & Brown* of counsel.

(1) *Certiorari* is not proper under the facts in this case and this court is without jurisdiction. Britton v. Steber, 62 Mo. 370; In re Garesche, 85 Mo. 469; State ex rel. v. Phillips, 96 Mo. 570; State ex rel. v. Court of Appeals, 99 Mo. 216; State ex rel. v. Court of Appeals, 101 Mo. 174; State ex rel. v. Smith, 104 Mo. 419; State ex rel. v. Smith, 105 Mo. 6; State ex rel. v. Rombauer, 125 Mo. 632; State ex rel. v. Smith, 129 Mo. 585; State ex rel. v. Rombauer, 140 Mo. 121; Smith v. Railroad, 143 Mo. 33; Schaffer v. Railroad, 144 Mo. 170; Hess v. Gang, 145 Mo. 54; Railroad v. Smith, 154 Mo. 300; Bradley v. Ins. Co., 163 Mo. 553; State ex rel. v. Smith, 173 Mo. 399; State ex rel. v. Smith, 176 Mo. 90; Wilden v. McAllister, 178 Mo. 732; Clark v. Railroad, 179 Mo. 66; Manning v. Smith, 188 Mo. 167; Sublett v. Railroad, 198 Mo. 190; State ex rel. v. Broaddus, 207 Mo. 107; Houck v. Water Works Co., 215 Mo. 475; State ex rel. v. Broaddus, 245 Mo. 136; In re Brick, 252 Mo. 323. (2) The law is well settled that it is the duty of appellant (not the clerk as contended by relators) to see that the transcript of the record is made and filed, and he has no right to rely on the clerk of the circuit court to perform that duty. McCafferty v. Railroad, 31 Mo. App. 340; Barnes v. Winn, 31 Mo. App. 487; Caldwell v. Hawkins, 46 Mo. 263; State v. Caldwell, 21 Mo. App. 645; State v. Dempsey, 168 Mo. App. 300; R. S. 1909, secs. 2047, 2048; Rule 28, Supreme Court, adopted October term, 1909. (3) Sec. 2047, R. S. 1909, requires appellants to file a certificate of judgment and order granting an appeal fifteen days before the

first day of return term of the appellate court. Sec. 2048, R. S. 1909; Crawford v. Railroad, 171 Mo. 77; State ex rel. v. Gibson, 187 Mo. 558; Rule 16, Springfield Court of Appeals. Where appellant fails to prosecute his appeal as required by law the judgment will be affirmed. R. S. 1909, sec. 2047; Crawford v. Railroad, 171 Mo. 68; Long v. Hawkins, 178 Mo. 103; Rules 16 and 26, Springfield Court of Appeals. "The mere fact that the appellant has on file or presents a copy of the transcript at the time such motion [to affirm] is made shall not of itself be deemed good cause within the meaning of said law." Rule 26, Springfield Court of Appeals. (4) The cases of Estey v. Post, 76 Mo. 412, Caldwell v. Hawkins, 46 Mo. 263, and Land & Investment Co. v. Martin, 125 Mo. 117, were all decided prior to the adoption of rule 28 of the Supreme Court and do not apply in any way to the case at bar.

WOODSON, C. J.—This is an original proceeding instituted in this court praying for a writ of *certiorari* to review the record of the Springfield Court of Appeals, in the case of Nick Gooch, respondent, v. C. G. Gilman, O. B. McKnight, H. C. McElhaney, Bart Morrow and C. W. McAbee, appellants, relators here, and asking that the judgment of the Springfield Court of Appeals be quashed, etc.

The facts as here presented are few and undisputed.

On the 2nd day of May, 1914, Nick Gooch recovered a judgment for $1406 against the relators in the circuit court of Jasper county. The defendants there, the relators here, took an appeal to the Springfield Court of Appeals, but failed, as counsel for respondents here contend, to file in that court a certified copy of the judgment and order granting the appeal; also failed to pay the $10 docket fee in the appellate court.

On October 5, 1914, the October term of the Court of Appeals convened; and on September 22, 1914, the

respondent Gooch filed in that court a motion to affirm the judgment of the circuit court. Notice of said motion was duly served upon the appellants there, the relators here. On the same day, the appellants there, the relators here, caused to be filed in the Court of Appeals a certified copy of the judgment of the circuit court, and of the order granting the appeal. On September 29th of the same year the relators here made application for a continuance and thereafter, on the 12th day of October, 1914, the Court of Appeals sustained the respondent's (Gooch's) motion to affirm the judgment of the circuit court.

On the 20th day of October, same year, relators here filed in the Court of Appeals, a motion for a rehearing, which was by that court overruled, and thereupon the relators filed in this court their petition for a writ of *certiorari,* which was duly issued and returnable to the present January call of this court.

I. The facts of this case, as previously stated, are undisputed; and upon those facts there are here presented but two legal propositions for determination, namely:

First: Has this court the constitutional power or authority to review the errors (not the jurisdiction) of the various Courts of Appeals of the State, upon writs of *certiorari?* and second: If so, did the Springfield Court of Appeals correctly dispose of the case of Gooch, respondent, v. C. G. Gilman et al., appellants, pending in that court, according to the last rulings of this court?

**Review of Error of Court of Appeals.**

Attending the first: This question is like Banquo's ghost, it seems as though it will not down, and is being continually presented here for reconsideration, ever since the ruling of this court in the cases of State ex rel. v. Broaddus, 238 Mo. 189, and Curtis v. Sexton, 252 Mo. 221, overruling a long list of opinions delivered by

this court, covering a period of more than a quarter of a century.

While I have not changed my opinion as regards the soundness of the law as announced in the earlier cases, nor as to the unsoundness of the rule announced in the cases just mentioned, however, since the court adheres to the latter doctrine, it seems to me that it is exceedingly unwise to have this question continually agitated in this court.

The fundamental principles of jurisprudence and the rules of procedure should remain firm and unchangeable, except by legislative enactment, for there is nothing which subjects the courts of the country to more just criticism than instability and vacillation in the rulings regarding their jurisdiction and power and authority, as well as to the rules of procedure.

After these years of acquiescence to the new rule by a majority of the members of the court, at this late date to overturn the present rulings upon this question and return to the former doctrine, would in my opinion be as unwise as the record of this court for the last few years clearly shows the former change was unwise and harmful to jurisprudence.

But since the bench and bar and counsel and litigants have readjusted themselves to the new procedure, a change back to the old rule would, to say the least, produce as much evil as good, if not more, and raise a new conflict in the ordinary administration of justice, which would take years to settle and to restore confidence in the stability of the courts, and the proper administration of the law.

For the reasons stated I am of the opinion that it would, at this late day, be unwise to again change front upon this all-important question; and I am therefore of the opinion that later rulings should be adhered to.

II. Returning to the second proposition presented for determination, namely, whose duty is it to file the

transcript of the record of a judgment of the circuit court in the appellate court when an appeal is taken, that of appellant or that of the clerk of the circuit court?

This court has repeatedly held that that duty rests upon the appellant and that he cannot shift it upon the clerk. [Caldwell v. Hawkins, 46 Mo. 263; State v. Dempsey, 168 Mo. App. 1. c. 300; Secs. 2047, 2048 and 2049, R. S. 1909; Rule 28, Supreme Court, Oct. 1909; Crawford v. Railroad, 171 Mo. 68, 1. c. 77; State ex rel. v. Gibson, 187 Mo. 536, 1. c. 558.]

That being true, and the record showing that he did not perform that duty within the time prescribed by the statutes and rules of this court, we are of the opinion that the Springfield Court of Appeals properly dismissed the appeal.

We are therefore of the opinion that the writ of *certiorari* heretofore issued by this court was improvidently done, and for that reason should be quashed; and it is so ordered.

*Brown, J.,* concurs in result; *Graves, Walker, Faris* and *Blair, JJ.,* concur in result in a separate opinion by *Graves, J.; Bond, J.,* dissents in an opinion filed.


GRAVES, J. (Concurring.)—I. I concur fully in the second paragraph of the learned Chief Justice's opinion. I also concur in the first paragraph wherein he states that it would be unwise to depart from the rule announced in the recent cases of State ex rel. v. Broaddus, 238 Mo. 189, and Curtis v. Sexton, 252 Mo. 221, but I concur for a different reason from the one assigned by the Chief Justice. I concur for the reason that under the Constitution there can be no doubt about the right of this court to use the writ of *certiorari,* to quash the record of a Court of Appeals, whenever such court reaches its

judgment by refusing or failing to follow the last previous ruling of this court upon the doctrine of law or equity involved in the case before such Court of Appeals.

The question suggests a bird's-eye-view of Missouri's judicial system. In the briefs it is suggested that some of our previous cases were written by judges who were members of the constitutional convention of 1875, and that they were blessed with lights which we do not have. No man holds in higher regard the distinguished judges who have written upon the question than the writer. This applies to those who were not in the constitutional convention of 1875 as well as those who were. But this is largely by the wayside.

When the Constitution (both the original and the amended) is read as a whole, it is clear that the framers contemplated a judicial system, with *one* Supreme Court, at the head of that system. It is clear that they contemplated that as to all doctrines of both law and equity there should be one final arbiter, and that arbiter the body which they chose to designate as the Supreme Court. It was never contemplated that one doctrine of law or equity should apply in certain appellate jurisdictions, and another and different doctrine in other appellate jurisdictions. Throughout the entire document (both the original and amended) runs the idea of harmony in the law. Not only so, but with this idea is the further one that there has been vested in the Supreme Court the power to enforce harmony of decision, in so far as they touch upon doctrines of law or equity. This is as it should be, because without a power lodged in some one body, harmony in the doctrines of the law announced is but an iridescent dream. It is all well enough to say that the judges of the Court of Appeals are just as conscientious in the performance of their duties as are the judges of this court (a question cheerfully conceded) and that they will certify cases here when occasion re-

Judicial System.

quires it, but that does not answer the question here in-volved. Judges, like individuals, honestly differ and give different constructions to the same language at times, and discrepancies in announced doctrines will creep in unless there is a power (at the head) some-where to act as final arbiter. On this question of the right of this court to issue the writ of *certiorari* in this case I shall confine my remaining remarks.

II. By the organic law (Art. 3, Constitution of 1875) the powers of government were committed to three separate and distinct magistracies. By the same instrument, article 4, the legislative power, with desig-nated restrictions, was confined to "The General As-sembly of the State of Missouri." By the same docu-ment, section 1, article 5, the executive power was vested in the Governor and other named and designated officers. By article 6 the judicial power "as to mat-ters of law and equity" is vested in the Supreme Court and other specifically designated courts. Section 3 of article 6 says:

<div style="margin-left:2em">Supreme Court:
Superintending
Control Over
Court of Appeals:
Certiorari.</div>

"The Supreme Court shall have a general super-intending control over all inferior courts. It shall have power to issue writs of *habeas corpus, mandamus, quo warranto, certiorari* and other original remedial writs, and to hear and determine the same."

This is the original section in the Constitution of 1875. By section 12 of the same article the St. Louis Court of Appeals was created and given appellate ju-risdiction in all cases within its then territory (city of St. Louis and the counties of St. Charles, Lincoln and Warren), but the decision of that court was not final in the following cases:

"In all cases where the amount in dispute, exclu-sive of costs, exceeds the sum of two thousand five hun-dred dollars; in cases involving the construction of the

264Mo43

Constitution of the United States or of this State; in cases where the validity of a treaty or statute of or authority exercised under the United States is drawn in question; in cases involving the construction of the revenue laws of this State, or the title to any office under this State; in cases involving title to real estate; in cases where a county or other political subdivision of the State or any State officer is a party, and in all cases of felony.''

As to cases falling within the foregoing class, an appeal would lie to the Supreme Court, or a writ of error would run from this court. This outlines the situation of the courts under the original Constitution of 1875. It should be noted, that up to this time, there was no provision in the Constitution which required the St. Louis Court of Appeals (the only one then created or existing) to follow the rulings of the Supreme Court upon questions of law or equity. It remained for the people by the amendment of 1884 to put in this limitation upon the constitutional power of the St. Louis Court of Appeals. Cases decided prior to the amendment of 1884 can therefore have no real bearing. The distinguished judges of this court, who were members of the Constitutional Convention, did not wrestle with that question, and their views of the question are not, for that reason, founded upon any greater light or insight into the question than we more humble ones who have succeeded them have. The people chose to add to the instrument which was their handiwork, and the question now is to what extent have they added. By section 5 of the amendment of 1884, the Supreme Court was given sole appellate jurisdiction in all the cases specifically named in section 12 of article 6 of the Constitution. Section 6 of the amendment of 1884 thus reads:

''When any one of said Courts of Appeals shall in any cause or proceeding render a decision which any one of the judges therein sitting shall deem contrary

to any previous decision of any one of said Courts of Appeals, or of the Supreme Court, the said Court of Appeals must, of its own motion, pending the same term and not afterward, certify and transfer said cause or proceeding and the original transcript therein to the Supreme Court, and thereupon the Supreme Court must rehear and determine said cause or proceeding, as in case of jurisdiction obtained by ordinary appellate process; *and the last previous rulings of the Supreme Court on any question of law or equity shall, in all cases, be controlling authority in said Courts of Appeals.*''

Although by section 3 of article 6, of the original Constitution ''a general superintending control over all inferior courts'' was given the Supreme Court, yet the constitution-makers in 1884 (the people) were determined to leave no doubt that such court had superintending control over the Courts of Appeal, and adopted section 8 of the Amendment of 1884, which reads:

''The Supreme Court shall have superintending control over the Courts of Appeals by *mandamus,* prohibition and *certiorari.*''

Thus it will be seen that this court is not only given the superintending control of the Court of Appeals, but the Constitution names the writs by which we can exercise this power and one of these writs is the writ of *certiorari.* Under this power if a Court of Appeals refuses to act, when it should act, we can by mandamus compel it to act. If such a court threatens to act when it has no lawful authority to act, we can by writ of prohibition stop it from acting, and we maintain further, that if such court acts, but in so doing goes beyond its constitutional power, and such is apparent upon the face of its record, then by the other writ of superintending control, i. e., the writ of *certiorari,* we can have their record certified to this court and quashed.

The Constitution (Section 8, Amendment of 1884) says that the Supreme Court "shall have superintending control over the Courts of Appeals by *mandamus*, prohibition, and *certiorari*." Here is specific authority for the use of the writ of *certiorari* as against these Courts of Appeals. It was put in there for a purpose. How can you use the writ of *certiorari* except it be to quash their records, when such records show that in the exercise of the jurisdiction given them they have overstepped the constitutional lines marked out for them? *Certiorari* brings up for review, it is true, only the record, but this record has been specifically provided for by the Constitution, as will be noted later.

The trouble with the long line of previous cases is, that they emphasize section 6 of the Amendment of 1884, and overlook entirely section 8 of the same amendment. Section 6, it is true, makes provision for the Courts of Appeals to certify cases here, but this is not the exclusive method. Section 8 is the other method, and the one given to this court. The Constitution should be construed so as to give effect to both sections. The construction we give so does, but the construction of these old cases excludes section 8, supra. Construed as a whole the Constitution gives two remedies: (1) If a judge of the Court of Appeals thinks the decision of his court contrary to the decision of this court, or to a decision of another Court of Appeals, such judge may have the case certified to the Supreme Court; and (2) if the opinion is contrary to the latest ruling of the Supreme Court, and thereby violative of the Constitution, then the Supreme Court may, under section 8, quash the record by first having it brought here by our writ of *certiorari*. This construction gives full force and effect to all of the Constitution. The opinions in the early cases gave no effect to that part of section 6 which says that the Courts of Appeals must follow our latest rulings, or section 8, which gives us superintending control by *certiorari*.

By section 15 of article 6, these Courts of Appeals are required to file opinions in writing which "shall be filed in the cases in which they shall be respectively made, *and become parts of their record.*" So that by constitutional edict the opinion in the particular case is made a part of the record of the case, and must be certified to this court as such record.

We do not urge the view (because not necessary in this case) that we can use our *writ of certiorari,* given by the Constitution as one of the writs of superintending control, for the purpose of an appeal to correct mere errors in the Court of Appeals, but what we do urge is, that if the record of the Court of Appeals shows that it has gone beyond its constitutional powers in any given case, we can quash that entire record, because it is one made without jurisdiction or constitutional authority. There are at least two classes of error which may be committed by a Court of Appeals. First, it may err and hold that it has jurisdiction, when under the organic law it has no such jurisdiction. This would be an error of judicial judgment, but no member of this court, at this late day, would hold that this court with its power of superintending control cannot prohibit such court from further proceeding with a cause over which it had erroneously assumed jurisdiction. Again, if such court refused to assume jurisdiction, when the Constitution gave it jurisdiction, such refusal would be an error of judgment, yet it cannot be contended that this court has not the power by the writ of mandamus to compel it to act. In other words the final arbiter of the jurisdiction of a Court of Appeals is the Supreme Court. They may guess (judicially guess) at the jurisdiction, but the last and final guess upon that question is lodged with this court. So, too, by the *writ* of *certiorari* there is another remedy. If upon the face of the whole record (which includes the opinion under the Constitution) it appears that the Court of Appeals was without jurisdiction in the first

place, or having jurisdiction in the first place, exceeded its jurisdiction later in the course of determining the case, then this court can quash that record.

In my judgment the error which crept into the opinions relied on by counsel and coming from this court prior to 238 Mo. is that these opinions overlook the constitutional limitation upon a Court of Appeals in deciding a case. If a Court of Appeals in deciding a case fails to follow the last previous ruling of this court upon the doctrine of law or equity involved in its case, the moment such act occurs such court has over-stepped its jurisdiction, and is then as much under the superintending control of this court by proper writ as if it had never possessed jurisdiction. The Constitu-tion has created the lines within which such courts must travel in deciding a case, and when such court oversteps these fixed lines, it is exceeding the jurisdic-tion granted by the Constitution creating the court. Its act is in excess of constitutional and legal authority, and therefore beyond its power or jurisdiction to do. So after all it is a simple question of jurisdiction or power. A Court of Appeals can't try a case over which the Constitution gives it no jurisdiction. If it under-takes to do so it proceeds without right, power or juris-diction, and although such act may be called error, yet it is error affecting jurisdiction, and can be reached by this court under our power of superintending control. Nor can such court decide a case in a way not author-ized by the Constitution. The organic law says that the last ruling of this court must be followed by such court. If such court disregards this constitutional pro-vision (whether purposely or otherwise) its act is be-yond its constitutional power, right or jurisdiction. As the act has been done, and appears upon the face of the record, the remedy is by our writ of *certiorari,* by which, in superintending such court, we may quash the record thus made. To do so would be but keeping such court within the jurisdiction conferred upon it by the

Constitution. It is at this point that the long line of
cases hinted at by my brother stops. Such cases over-
look the fact that the very moment one of the Courts
of Appeals fails to follow our last ruling, it crosses
the line of its fixed jurisdiction or power, and is there-
by and thereafter proceeding without right or jurisdic-
tion. It is not a mere error. It is much more. It is
error as to jurisdiction or power, and such an error is
always subject to review here under the proper writ.

It would be but idle ceremony to say that the Con-
stitution demands of these courts to follow our latest
rulings, and yet say there was no power to compel them
to regard this constitutional inhibition upon their
power. Jurisdiction is but the right or power to hear
and determine. It may be limited by the same instru-
ment which grants it. If the limitation is violated the
act is as much without right or power as if there had
been no grant. The Constitution fixes a pathway of
decision for these courts. If they get out of that path-
way, they are without constitutional power or jurisdic-
tion.

III. If it be true (and as I understand it, it is
contended in these previous cases) that section 6 of
the Amendment of 1884 was ordained for the single
purpose of providing for the certification of cases up
to us by the Courts of Appeals upon their violation
solely, why append at all to said section the last two
lines, which I italicised supra? These lines read:

"*And the last previous rulings of the Supreme
Court on any question of law or equity shall, in all
cases, be controlling authority in said Courts of Ap-
peals.*"

Obviously, the language used in the first eight
lines of the section was sufficient to fix and had al-
ready fixed on the Courts of Appeals the duty in the
contingency named, of transferring cases up to us, of
their volition. The last two lines of this section do

not add one feather's weight to the constitutional command to the Courts of Appeals. For this section plainly says before these lines are reached, that *when the decision of any Court of Appeals is contrary "to any previous decision of . . . the Supreme Court," the case wherein the difference occurs shall be sent up to us.* Eliminate the last clause wholly and the constitutional command to the Courts of Appeals to follow "any previous decision," i. e., existing and not overruled, and therefore "last previous ruling," of this court, still remains clearly and unmistakably expressed. If therefore, as contended, the whole of section 6 be but the statement of a duty to be performed by the Courts of Appeals upon their initiative only, why by useless tautology add the last two lines to that section to express narrowly a command already fully expressed broadly. In other words, the first eight lines of section 6 of the Amendment of 1884 fully fixed the duty upon the Courts of Appeals to certify cases here, under given contingencies, and the addition of the lines we have requoted above added nothing to that mandate. These last lines clearly impose a new duty, and one that this court can enforce by the power granted under section 8, supra, which empowers this court to superintend those courts by the three writs named.

For these reasons I concur in paragraph one of the opinion. In paragraph two of the opinion I concur fully. The result is that I concur in the result of the opinion, but for different reasons as herein expressed. *Walker, Faris* and *Blair, JJ.,* concur in these views.

## DISSENTING OPINION.

### I.

BOND, J.—A writ of *certiorari* was sued out in this court to quash the judgment of the Springfield Court of Appeals. The proceeding was instituted here

by the appellants in a case lodged in the appellate jurisdiction of that court by their appeal from a judgment of the circuit court of Jasper county. In the exercise of its appellate jurisdiction of said cause, the Springfield Court of Appeals sustained a motion of the respondent to affirm the judgment of the lower court. The theory upon which the present proceeding was instituted by the parties appellant, in the Springfield Court of Appeals, is that its decision affirming the judgment against them was in conflict with the rulings of this court in similar cases. For that reason they undertook to shift the cognizance of their appeal from the Springfield Court of Appeals to this court.

The question which goes to the marrow of this controversy cannot be stated with more conciseness and clearness than it is expressed in the learned majority opinion of WOODSON, C. J., in the following terms:

"Has this court the constitutional power or authority to review the errors (not the jurisdiction) of the various Courts of Appeal of the State upon writs of *certiorari?*"

Judged by case law, as it has been expounded by both Divisions of this court and by this Court in Banc in an unbroken current of authority extending over thirty-five years, there could be put one answer to the question, which is, that no such power of review could be exercised without *altering* the terms of the present Constitution and usurping powers which were taken away from this court by that instrument. [In re Garesche, 85 Mo. 469; State ex rel. New York Life Ins. Co. v. Philips, 96 Mo. 570; State ex rel. Dawson v. St. Louis Court of Appeals, 99 Mo. 216; State ex rel. Teasdale v. Smith, 101 Mo. 174; State ex rel. Scott v. Smith, 104 Mo. 419; State ex rel. Hyatt v. Smith, 105 Mo. 6; State ex rel. Third National Bank v. Smith, 107 Mo. 527; State ex rel. Giovanoni v. Rombauer, 125 Mo. 632; State ex rel. Stevens Lumber Co. v. Smith, 129 Mo. 585; State ex rel. Lancashire Insurance Co. v. Rom-

bauer, 140 Mo. 121; Smith v. Railroad, 143 Mo. 33; Schafer v. St. Louis & Hannibal Ry. Co., 144 Mo. 170; Seaboard National Bank v. Woesten, 144 Mo. 407; Hess v. Ganz, 145 Mo. 54; M., K. & T. Ry. Co. v. Smith, 154 Mo. 300; Bradley v. Insurance Co., 163 Mo. 553; State ex rel. Hobart v. Smith, 173 Mo. 398; State ex rel. Scott v. Smith, 176 Mo. 90; Wilden v. McAllister, 178 Mo. 732; Clark v. Railroad, 179 Mo. 66; State ex rel. Manning v. Smith, 188 Mo. 167; Sublette v. Railroad, 198 Mo. 190; State ex rel. Springfield Traction Co. v. Broaddus, 207 Mo. 107; Houck v. Waterworks and Electric Light Co., 215 Mo. 475.]

There was no break nor shadow of turning in the doctrine announced in those cases until the ruling in State ex rel. Curtis v. Broaddus, 238 Mo. 189, where the opinion of BROWN, J., was adopted by a divided court.

Tested by an analysis of the language and purpose of the Constitution, there can be no question as to the *lack of power* in this court to use its writ of *certiorari* as a substitute for an appeal or writ of error so as to reach the causes within the final appellate jurisdiction of the Courts of Appeals.

Let us glance briefly at the terms of the Constitution. Section 5 of the Amendment of 1884 took away from the Courts of Appeals the intermediate appellate jurisdiction which they would have of all causes ultimately reviewable by the Supreme Court under the Constitution before that amendment, and vested that transported jurisdiction exclusively in the Supreme Court as if it had been acquired by a direct appeal or writ of error. It left untouched the final jurisdiction vested by section 12 of article 6 of the Constitution in the St. Louis Court of Appeals, and termed it "*final* appellate jurisdiction" and required the Supreme Court to transfer all cases falling within its scope, to the St. Louis Court of Appeals (Section 19, article 6) and afterwards to transfer similar cases to the Kan-

sas City Court of Appeals.  [Am. 1884, sec. 7.]  In this way every vestige of power to review a case falling within the final jurisdiction of the Courts of Appeals, *by appeal or writ of error,* was taken away from the Supreme Court, by the express terms of the Constitution.  It is undeniable that from the date of the amendment of 1884 and in and by its terms, the Constitution abrogated all previous powers in the Supreme Court, to exercise *appellate jurisdiction* of any cause or proceeding which could be taken to the Court of Appeals. That amendment first divided the appellate jurisdiction and made that of each system of courts exclusive.  Its second step was to provide for harmony of decision on the part of the Courts of Appeals *inter sese* and with the Supreme Court.  This was effected in two sections of the amendment, to-wit:

"Sec. 6.   When any one of said Courts of Appeals shall in any cause or proceeding render a decision which any one of the judges therein sitting shall deem contrary to any previous decision of any one of said Courts of Appeals, or of the Supreme Court, the said Court of Appeals must, of its own motion, pending the same term and not afterward, certify and transfer said cause or proceeding and the original transcript therein to the Supreme Court, and thereupon the Supreme Court must rehear and determine said cause or proceeding, as in case of jurisdiction obtained by ordinary appellate process; and the last previous rulings of the Supreme Court on any question of law or equity shall, in all cases, be controlling authority in said Courts of Appeals."

"Sec. 8.   The Supreme Court shall have superintending control over the Courts of Appeals by mandamus, prohibition and *certiorari.*"

The one (section 6) is designed to harmonize "erroneous" decisions, the other to harmonize jurisdictional decisions, and the two combined were to be used to bring about a harmonious body of jurisprudence in

this State. . Considering these two sections in order: There is no possible uncertainty or ambiguity about the meaning of the first section, or as to the method prescribed to carry out its purpose. A Court of Appeals constituted of three judges, having every qualification of intellect and character of a judge of this court, renders a decision which is deemed by "any *one* of said judges" to be contrary to "*any* previous" decision of any one of said Courts of Appeals or of the Supreme Court. That view he must express in an authentic way. And thereupon said court must of its own motion transfer the cause to the Supreme Court for rehearing as in case of appellate jurisdiction rightfully acquired. The next clause of the *same sentence* is to-wit:

"And the last previous rulings of the Supreme Court on any question of law or equity shall, in all cases, be controlling authority in said Courts of Appeals."

This was added to clarify and perfect the section under review in two ways:

First, to show that the dissenting judge must compare the opinion of his brother with the "*last*" previous ruling of the Supreme Court and not with "*any*" former decision. A previous clause of this section would permit such judge to state that the decision of his court was contrary to "any" previous decision, etc. The latter clause was to render certain the meaning of the first, and to make it the duty of such judge to restrict his comparison of the opinion of his court, to the *last* previous ruling of the Supreme Court. This must be so, for otherwise, under the former clause of the section, a judge of the Court of Appeals might have caused a case to be certified here because it was contrary to some prior decision of this court, which had been overruled by its "last previous ruling."

Second, to furnish a body of *legal doctrine* for the use of the Courts of Appeals, in the decision of causes

of which they have final appellate jurisdiction. These two purposes alone, were within the intendment and object of the last clause of section 6 of the Constitution, and no other meaning can be given to it without distorting the entire section and depriving the language used of its plain and clear significance. Suppose instead of making the last "previous rulings of the Supreme Court" the body of legal doctrine to which the Courts of Appeals must have recourse in order to determine questions within their jurisdiction, the Constitution had finished the sentence by making the common law, or any other body of law, the "controlling authority" of the Courts of Appeals, would any lawyer have the temerity to say that a misapplication of those doctrines, or a misconception of the rules of the common law, would *go to the power* of the Courts of Appeal *"to hear and decide"* the cause and render an opinion and judgment therein based upon their own comprehension of the common law or other body of law, furnished as a guide for their judicial action? What does jurisdiction mean other than the right to make a decision according to the discretion of the court to which the power is granted? To make a mistake in the application of law which should guide the court in the exercise of judicial power would indeed be *error* of decision, or more aptly an *erroneous exercise* of jurisdiction on the part of Courts of Appeals, but it could not, in the nature of things, be a deprivation of jurisdiction in the sense of power to act and decide, for by necessary hypothesis that faculty is fully vested as to certain causes which the Constitution lodges in the final appellate jurisdiction of the Courts of Appeals, and points out to them a body of law to be applied in the rendition of their judgments. The want of jurisdiction exists only when the court is *without power to act* in the premises. It can never be predicated on a mistake in applying the law to a case which is rightfully cognizable by the court.

It is admitted in the instant case that the appeal was properly taken to the Springfield Court of Appeals. The learned majority opinion concedes that full jurisdiction was vested in that court to hear and determine the cause, and then proceeds to dismiss this *certiorari* brought to quash the judgment of that court, *solely* on the ground that the decision of that court *did not conflict* with other rulings of this court. Does it not necessarily follow from such reasoning, that the question is made to turn upon *what* was decided by the Springfield Court of Appeals and not upon its *power to decide*. This is proved by the fact that the majority opinion leaves that judgment *undisturbed* on the theory *only,* that the court rendering it gave a *correct* decision. In other words, the majority opinion hinges its conclusion on the *particular kind of decision* rendered by the Court of Appeals and not upon the question of the *power of that court to act in the matter*. This being so, there is no escape in logic from the conclusion that the writ of *certiorari* in this case presented to this court only the question of the *correctness* of the decision of the Springfield Court of Appeals. To put the matter simply: Does not the majority opinion in effect say to the Springfield Court of Appeals we refrain from quashing your judgment because, *having rightful jurisdiction of the case brought here,* you exercised that jurisdiction by rendering a *correct* decision, but if you had erred in applying the law (last previous rulings of the Supreme Court) you would have been without any jurisdiction and your judgment would have been a simple nullity? Is it not patent that the argument leading to such a result, is based upon an utter misunderstanding of the essential difference between the *want of jurisdiction* and the *erroneous exercise of jurisdiction*. It is fundamental that the latter cannot annul a judgment. It does furnish a basis for correction ''by ordinary appellate process'' and that is the extent to which it can be reviewed. So, in this case, if a writ

of error could run from this court to the Courts of Appeals, or if an appeal could be taken to this court, then the error of any of its decisions would be correctible here, but since no one will contend *under the present Constitution,* that this court has any appellate power of review of the decisions of the Courts of Appeals, it follows that it can have no authority to use the writ of *certiorari* as a means of exercising *appellate* jurisdiction of said courts. For to give the writ that scope would nullify the Constitution.

## II.

The second section of the Constitution above quoted gives this court the right to issue a *certiorari* to the Courts of Appeals. Not having the right, under the Constitution, to convert that writ into a medium for appellate jurisdiction, the question is what function is left to it when directed to the Courts of Appeals? *Certiorari* like mandamus and prohibition is a prerogative writ and inhered in the King's Bench in England from the time that tribunal emerged from the chaotic conditions of the judiciary by the erection and division of courts which took place some time after the Norman Conquest. Originally the King sat in person with his justices in that court that the fiction might obtain that all justice flowed from the Royal Fount. [Bacon's Abridgement, Titles: *Certiorari,* Mandamus and Prohibition.] Its function was the removal of the record of inferior courts for review. With the changes necessitated by the different judicial system of this country, it is now employed by our courts of *general* jurisdiction as well as of last resort in aid of their superintendency of inferior tribunals and boards. In Missouri, it is a writ issuable by the circuit court, as well as the appellate courts. [Constitution, art. 6, sec. 23; St. Louis County Court v. Sparks, 10 Mo. 117; State ex rel. Jones v. Laughlin, 73 Mo. 443; State v. Daniels, 66 Mo. 192; State ex rel. v. Edwards, 162 Mo. 660;

State ex rel. v. Shelton, 154 Mo. 1. c. 691, affirmed in State ex rel. v. Mosman, 231 Mo. 474.]

Its normal scope is to quash proceedings had without or in excess of jurisdiction, or if within the jurisdiction of the inferior court which are not correctible by appeal, or writ of error. It is not contended in the learned opinion of my brother GRAVES, filed to fortify the majority opinion in this case, that the writ is available *under our Constitution against the Courts of Appeals, except* upon a showing of record that such courts are *without jurisdiction* or have *exceeded their jurisdiction* in the rendition of their judgment. Hence, the burden of his argument is that such courts failing to follow the "last previous ruling" of this court thereby failed of any jurisdiction and their judgments are quashable as simple nullities. This narrows the question to a single inquiry.

Is a jurisdiction once constitutionally vested in the Courts of Appeals lost, the moment its exercise results in a judgment or decision reached by a mistake in applying to the solution of the questions under review, *the last previous rulings* of the Supreme Court? If this question is not conclusively answered in the negative from its *mere asking,* then we think the foregoing analysis of the separate clauses and context of section six of the amendment of 1884 has demonstrated the impossibility of any other answer. In the light of the obvious meaning of that section, it looks like a contradiction in terms to assume that it warrants the contention which would be implied in an affirmative answer to the above question. Section six of the amendment will not bear any other interpretation than that it was adopted to give a specific plan for transferring to this court appellate jurisdiction as if "obtained by ordinary appellate process," of such causes only as "*any judge*" of the Courts of Appeals causes to be certified here in the interest of harmonizing the rules of decision of all the appellate courts of the State. To

contend therefore under *that section,* that this court can by *certiorari* harmonize the decisions of the Courts of Appeals is simply to argue *against* the very recitals and language of the section itself, for it specifies the *only* way in which decisions of the Courts of Appeals can be brought here for correction of doctrine. But if the view of my learned brother could obtain, the result would be in practical effect that such decisions might be brought here by the *dissent* of a lawyer to the decision of the Courts of Appeals, because of its conflict with latest ruling of this court and through the instrumentality of a *certiorari* obtained from this court upon a showing of that basis for his dissent. As yet the Constitution has not authorized that plan to supplant its specific one, requiring a *judge* of the appellate court to point out such conflict.

But my learned brother thinks that something can be made out of the language of section 8 supra, in support of the use of a *certiorari* to quash the judgment of Courts of Appeals when found by this court not to be rendered in accordance with its last previous rulings on the questions of law and equity. That a *certiorari,* or any other writ mentioned in section 8 of the amendment of 1884 may be used by this court in aid of its power of superintendence is clear under the language of that section, and that it will bring up the records of inferior tribunals for that purpose and that the power to quash such records depends upon their contents, is well settled in the jurisprudence of this State. The power to use such extraordinary writs is an attribute of courts of general and final jurisdiction and certain provisions of the Constitution declaratory of these essential powers of such courts are a part of our organic law, as has been shown, and whatever may be the scope of that writ in *other* cases, it is undoubtedly restricted in its application to the Courts of Appeals to a review of the question of jurisdiction only, for the primary

purpose of the amendment of 1884 was to exscind all appellate jurisdiction of the Courts of Appeal, and hence *no writ* can run to that court to review its appellate proceedings and this is conceded in the learned opinion of my brother GRAVES, which predicates its conclusion entirely upon the theory that, *absent* following the last previous decisions of this court, the Courts of Appeals are *absent* jurisdiction in a case otherwise rightfully pending before them.   We have shown in this discussion that it cannot be true, that a court invested with power to hear and decide a cause, can lose its jurisdiction thereof by mere error or incorrectness of decision.   It must therefore follow that the writ of *certiorari* being restricted into functions, when directed *to the Courts of Appeals* to a jurisdictional review, cannot reach anything except jurisdictional action by that tribunal and is not applicable to any decision of the Courts of Appeals which *erroneously* applies "the last previous rulings of the Supreme Court" on any question of law or equity, and that it can only apply to such courts when their decisions are made in cases which they have no power to decide, or in excess of the limitation prescribed for the exercise of their judicial penalties.   For instance, if the record of a Court of Appeals should disclose that it was attempting to exercise jurisdiction in any one of the nine instances, wherein the power so to do is prohibited by the Constitution of this State a writ of *certiorari* would lie after a final judgment in that matter for the purpose of quashing it.   Or before judgment, such Court of Appeals might be restrained by prohibition, but barring some exercise, or attempted exercise, of jurisdiction outside or in excess of the power given to those courts, this court has no authority by *certiorari* or any other medium of superintendence to interfere with other judicial action in the matters of which *final* jurisdiction has been granted to them by the Constitution.

Suppose the writ of *certiorari* is issuable in these cases—what does it accomplish? It can only bring up the record to be quashed. When that is ordered what becomes of the original cause still pending in the Court of Appeals? Must that court proceed to rehear and redecide it? If so, and the court still conscientiously believes that it has correctly interpreted the last rulings of this court, must it then yield its own judgment, and render a decree registering the new views of this court? If the Court of Appeals should do this, and comply with the directions expressed by this court in considering the writ of *certiorari,* is that anything else than subjecting themselves to the state of being *mandamused* to render a particular judgment? But is not such a result opposed to the whole theory of jurisprudence which has universally denied the power of *any* court to prescribe by mandamus *what* decision as to a matter of law or equity another shall make in a cause rightfully before it for trial. If this is the necessary effect of the proposed uses of *certiorari* in such cases, can the reasoning which leads to it (a conclusion absurd according to the axioms of the law) be anything other than a tissue of fallacies.

It is not necessary to defend the wisdom of the Constitution in relegating, as it does in the two sections under review, the power to correct the exposition of law made by the Courts of Appeals, to the action of an upright and able judge of such court, in the manner defined by the Constitution. It is enough to say, that this plan is the constitutional one. Neither is it necessary to this dissent, to call attention to the vast mass of causes consuming the time and delaying the work of this court, which may be brought here by attorneys who are dissatisfied with the decisions of the Courts of Appeals and deem them at variance with the rulings of this court. Such considerations illustrate the mischief ensuing from the use of writs of *certiorari* in such cases, but they do not affect the ques-

tion of the constitutional right to apply for such writs, and I base my dissent not upon these inconveniences, but entirely upon the ground that no authority can be shown in any provision of the Constitution, whereby this court is empowered to review any decision of a Court of Appeals on a nonjurisdictional question, or for any mistakes or errors in the decisions of questions within the final appellate jurisdiction of such courts, as defined in the Constitution.

I am wholly unable to follow the argument of the learned majority opinion that such writs as the present should be awarded, because this court recently has overruled what the majority opinion concedes is and was the correct rule on the subject for more than a quarter of a century. If the matter in issue was one relating only to the law governing property rights, there might be some plausibility in the view that interest which had become vested and depended for their security upon such error of doctrine, should not be disturbed by a change of legal doctrine. But that argument has no application to this case. The question here is as to the power of this court to act at all, and if the principle as announced for so long after the adoption of the Constitution and until the recent novelty, is *sound* (as is conceded in the majority opinion), then this court is guilty *of a simple act of usurpation when it undertakes* to issue a writ of *certiorari* like the present, and its judgment in so doing is absolutely void. The Constitution is the basis of all government and all judicial power, and I cannot agree that any condonation should be extended to its violation, nor that its *authority* should not be restored, because it has once been set aside by a ruling of this court diametrically opposed to its own decisions for more than a generation and to the words, meaning and purpose for which the Constitution was amended in 1884.

For the foregoing reasons, and that my own view may be understood by the enlightened bar, as well as

the people of the State, I have filed this protest. I think the *certiorari* awarded by this court should be stricken from the docket as presenting no matter which we have no jurisdiction to hear, and as seeking to move this court to commit a plain act of usurpation.