THE STATE EX REL. TRACHSEL MOTOR CAR COMPANY v. FRANCIS H. TRIMBLE ET AL., Judges of Kansas City Court of Appeals.—18 S. W. (2d) 889.

Court en Banc, May 25, 1929.

*Culver, Phillip & Voorhees, Randolph & Randolph* and *Otto Imbersteg* for relator.

*William K. Amick* for respondent.

BLAIR, J.—In this proceeding by certiorari, relator seeks to quash the opinion of respondents affirming a judgment for plaintiff in the case of Nellie Williams against relator, lately pending before respondents as judges of the Kansas City Court of Appeals.

The first count of the petition, upon which the case was submitted to the jury, asked damages from relator in the sum of $1500 for wrongful conversion of an automobile under a chattel mortgage alleged to have been invalid because of usury charged upon the indebtedness such chattel mortgage was given to secure. The jury found for plaintiff and assessed her damage at the sum of $1295.

As appears from respondents' opinion, relator sold to Mrs. Williams (plaintiff in the trial court) a Nash automobile for $1528.15, which price included extra equipment, and took in trade plaintiff's old automobile at $800.15, less a $225 chattel mortgage on such old automobile. This resulted in a net credit to plaintiff in the sum of $575.15, leaving $953 due on the Nash automobile. An item of $82.42, labeled "interest and handling" was added, making a total of $1035.42. Thereupon, plaintiff executed her note for $1035.42, payable to relator in monthly installments, all of which were for $60, except the last installment, which represented quite a substantial balance. The note given by plaintiff bore interest at eight per cent upon each installment after maturity and was secured by a chattel mortgage on the Nash automobile. It was stipulated that, upon default of five days in any installment, the entire note became due and payable and mortgagee was authorized to take possession of the Nash automobile and to sell it under the conditions specified in the mortgage. Plaintiff defaulted as to the first payment and relator declared the entire amount of the note due and payable; took possession of the automobile under the chattel mortgage, refused to accept past due installment payments and sold said automobile. Plaintiff testified to an admission of relator's president that the automobile sold for $1295, which was the exact amount of the damages assessed by the jury. It was the contention of plaintiff below that the item of $82.42 was interest and that its exaction constituted usury and that

the chattel mortgage was void for that reason and that the seizure and sale of the automobile under such void chattel mortgage constituted a wrongful conversion of plaintiff's property. It was on this theory that the jury found for plaintiff.

Respondent's theory of the case is best stated in the following excerpts from their opinion:

"The facts in this case show that the sale price of the automobile, including extra equipment, was $1528.15. After giving plaintiff credit on this sale price, with the agreed value of her old car which she traded in on the new car, she still owed $953 on the new car. Instead of defendant requiring plaintiff to give her note for this amount, $82.42, which is called 'interest and handling,' was added to the $953, making a total of $1035.42, for which amount plaintiff executed her note. The $82.42, which was included in the note, did not represent any part of the purchase price of the car. This evidence tended to show that the $82.42 represented a charge made by defendant in consideration of the time given plaintiff in which to pay the balance on the purchase of the car. Appellant insists that as the $82.42 was denominated 'interest and handling,' the burden was on plaintiff to show what part of said amount was charged as interest, and that the part so charged exceeded the legal rate. The trouble with this contention is that defendant had no legal right to make a charge against plaintiff for 'handling' this note. Any unauthorized charge for the use or loan of money or for the forbearance of a debt due, by whatever name, is usury, if such charge exceeds the lawful rate of interest. The $82.42, which was included in the note in question, was more than eight per cent on the balance due on the car if the entire balance had remained unpaid until the due date of the last installment. . . .

"The evidence in this case tends to show that the charge of $82.42 did not represent any part of the purchase price of the automobile, but was an 'interest and handling charge' which was included in the note in addition to the amount which plaintiff owed defendant on the purchase price of the car. The jury so found under proper instruction. This finding is binding on us. We, therefore, hold that the inclusion of this charge in the note tainted the note with usury, and rendered null and void the chattel mortgage given to secure it."

I. It is first contended by relator, that, in approving Instruction A, respondents contravened decisions of this court which hold that "instructions must be confined to, and governed by, the pleadings and the evidence." The cases relied on need not be set out. The rule itself is well established. The trouble is that we find no ruling of respondents in this

case in conflict with such rule. Instruction A is not mentioned in respondents' opinion. The nearest reference to it is a general reference to the instruction as a whole when it was held that the jury found "under proper instructions" that the $82.42 item did not represent any part of the purchase price. Respondents were not passing upon the correctness of the instructions. No such issue was decided by them. The instructions were merely assumed to be proper instructions. Not only was Instruction A not specifically referred to in the opinion, but its correctness was not made a matter of decision by respondents. Even under the liberal rule that instructions, pleadings and exhibits specifically referred to and made matter of decision are deemed part of the opinion, although not set forth therein (State ex rel. Hayes v. Ellison (Mo. Sup.), 191 S. W. 49, l. c. 53), Instruction A is not before us for consideration in this proceeding and such claim of conflict must be disallowed.

II. Respondents' opinion is said to be in conflict with State ex rel. Attorney-General v. Boatmen's Savings Institution, 48 Mo. 189, l. c. 193, in holding that the evidence in the case before them was sufficient to authorize a finding by the jury that the item of $82.42 constituted usury. It was held in that case that usury has no application to the purchase of bills of exchange. The court said: "In order to constitute usury there must be an express or an implied loan. [Nichols v. Fearson, 7 Pet. 109.] In the absence of a loan there can be no usury. Usury is not predicable of a purchase."

Respondents held that the evidence justified a finding that the $82.42 item did not represent any part of the purchase price, but was an interest and handling charge included in the note in addition to the amount which plaintiff owed relator on the purchase price of the automobile. We are cited to no case where this court has ruled that facts similar to the facts set forth in the opinion of respondents were insufficient to support such finding. We are not here dealing with the question of the correctness of respondents' opinion in that regard, but are concerned only with conflict and we find none.

III. The most serious claim of conflict is in respect to the ruling of respondents that the trial court did not err in excluding proof that relator had expended $276 for repairs and reconditioning of the automobile, after it was taken from plaintiff and before it brought $1295 at the mortgagee's sale. Plaintiff had been permitted to testify to a statement made by relator's president that the automobile brought the sum of $1295 at said sale. The evidence seems to have been admitted on the ground that proof of the sale price was competent as a circum-

stance bearing on the issue of the value of the automobile wrongfully taken from plaintiff. On this point respondents said:

"After plaintiff testified that she heard Mr. Trachsel say that he resold the car for $1295, defendant offered to show by her that she also heard him say that the sum of $276 was spent on the car to put it in condition for resale. This offer of proof was rejected, and contention is made here that such action was error.

"The chattel mortgage being void, defendant had no lawful right to take possession of or sell the car thereunder. Since defendant's possession was wrongful, it had no right to charge plaintiff with the cost of repairs made on the car without her knowledge or consent. One may not wrongfully take possession of the property of another, expend money in repairing it, then sell it at a price of his own making, and when called upon to respond in damages for his wrongful act, charge the owner with the cost of repairs made on the property without the knowledge or consent of such owner. In this case, it is true that the repairs, if made, would tend to enhance the value of the car, but being made without authority of law, or consent of the plaintiff, the cost thereof cannot be charged to her. For this reason defendants offer to prove the cost of such repairs, was immaterial, and was therefore, properly rejected."

This ruling is said to conflict with Matthews v. Missouri Pacific Railway Co., 142 Mo. 645, l. c. 666. It was there ruled that "for the purpose of ascertaining the value of the barn at the time of its destruction, plaintiff was entitled to put the jury in possession of all the facts bearing upon the question." Respondents cited the Matthews case and quoted the foregoing therefrom in support of their ruling that the sale price of $1295 constituted a circumstance admissible in evidence as tending to prove the value of the automobile when wrongfully taken from plaintiff. But respondents refused to recognize and apply the same rule when relator invoked it as justification for its claim of error on the part of the trial court in excluding its own offer to show by plaintiff that she had heard relator's president, as part of the same conversation to which she testified, say that the $276 was spent on the automobile to put it in condition for resale.

We think, in approving the exclusion of such proof, respondents' ruling conflicted with the general rule laid down in the Matthews case that all facts bearing upon the question of value are admissible in evidence. It appears to us that respondents put their ruling on the wrong ground. Relator was not seeking to charge appellant with the cost of repairs put upon the automobile after it was wrongfully taken. The sale price was only competent as proof tending to show the value of the automobile when taken by relator, if the automobile was substantially in the same condition when sold that it was

in when taken. If the value at that time was to be measured by a statement of relator's president as to the amount of the sale price, relator should have been permitted to show the entire conversation, since the conversation as a whole tended to prove that such sale price did not reflect the value of the automobile when taken.

The issue was the reasonable value of the automobile at the time it was wrongfully taken from plaintiff. [38 Cyc. 2094; Coffey v. National Bank, 46 Mo. 140; Thomas Mfg. Co. v. Huff, 62 Mo. App. 124.] The trial court permitted proof tending to show the resale price as a circumstance tending to show its value when taken. The fact, if it was a fact (as the excluded portion of the conversation tended to prove), that the value had been substantially augmented because of repairs upon and reconditioning of the automobile after it was taken from plaintiff and before it was resold, was a circumstance tending to show the sale price did not represent the value of the automobile when taken. In approving the exclusion of such proof by the trial court, we think respondents contravened the principle decided in the Matthews case, as well as "the general trend of judicial decisions," as relator suggests.

The opinion of respondents affirming the judgment of the trial court is therefore quashed. All concur, *Walker, J.*, in a separate opinion, except *Frank, J.*, not sitting.

WALKER, J. (concurring in part):—I concur in the opinion of my learned brother, except in regard to a reference in Paragraph I therein, which implies a right on the part of this court to review other than the Court of Appeals' opinion to determine the existence of a conflict of that court's ruling with our decisions.

No such right exists, nor has it ever existed. Recognition has loosely been given to such a right in discussing the question of a conflict in several former opinions. In these cases the source and limit of our authorty is ignored and it is sought to be assumed that our power of review of the Courts of Appeals is akin if not equal to that given to us in other certiorari cases or in the review of a case upon appeal or writ of error. Other than by attempted judicial legislation there is no legal basis for this assumption. The superintending power of the Supreme Court under the Constitution (Sec. 8, Amdt. of 1884 to Art. VI) over Court of Appeals by mandamus, prohibition and certiorari is limited to requiring such courts to act within the scope of their jurisdiction. Semble: if a court of appeals refuses to act when it should act, the Supreme Court may, by mandamus, compel it to act; or if it threatens to act without authority, the Supreme Court may prohibit it from so doing; or if, in acting, it exceeds its constitutional powers, apparent from the

face of the record, the Supreme . Court may by certiorari have its record certified and quash the same. [State ex rel. v. Robertson, 264 Mo. 661, 175 S. W. 610.]

The Supreme Court, however, has no legal power to determine whether a Court of Appeals erred in its application of the rules of law to the facts, as disclosed in the record of the case, but only when in announcing the law upon the *facts as stated in the opinion* the Court of Appeals fails to follow the last previous ruling of the Supreme Court. [State ex rel. Amer. Yeoman v. Reynolds, 287 Mo. 169, 229 S. W. 1057.]

In State ex rel. Vulgamott v. Trimble, 300 Mo. 1. c. 101, 289 S. W. 796, we said: "The purpose of this peculiar form of *certiorari* is to secure uniformity of opinions, and the harmony of the law."

In State ex rel. Roberts v. Trimble, 316 Mo. 1. c. 364, we said in effect: Under the clearly defined limitation upon our powers of supervision over inferior courts . . . including Courts of Appeals, in order that the record of a Court of Appeals . . . may be quashed by this court on certiorari, *the opinion* in such case must have announced and applied some general conclusion of law contrary to a ruling of this court on a like or similar state of facts.

In State ex rel. Bull Dog Auto Ins. Co. v. Bland, 291 S. W. (Mo.) 499, we held, with a strict regard for the limitation of the Constitution, that the purpose of the exercise of the writ of certiorari to review the rulings of the Courts of Appeals, as in conflict with controlling decisions of this court, was to secure uniformity *in opinions* and harmony in the law.

Recognizing the correctness of this conclusion in State ex rel. Amer. Yeoman v. Reynolds, 287 Mo. 1. c. 173, we said: "This ruling, which is but a repetition of others to a like effect, was not intended and does not limit the right of Courts of Appeals to authoritatively construe any statute. Their right in this regard is final and unlimited except where their construction contravenes a decision of this court. Until such contravention is found to exist, our interference by *certiorari* is unauthorized, because our supervisory jurisdiction is founded solely upon the fact that a Court of Appeals has not followed our last previous ruling. [Art. VI, Sec. 6, Amdt. 1884, Mo. Const.; State ex rel. Gilman v. Robertson, 264 Mo. 661; State ex rel. Tiffany v. Ellison, 266 Mo. 604.]"

The purpose of the grant of power to the Supreme Court to supervise the rulings of the Courts of Appeals being, as its terms indicate, to preserve uniformity in the rulings of our courts of last resort and to promote the harmony of the law, to what are we to look to ascertain whether that uniformity has been preserved? Even the tyro in the rules of interpretation would, without hesitancy, answer *to the opinions themselves.* If no lack of harmony be found therein

1086

then the Supreme Court has reached the limit, under the Constitution, of its power to supervise the rulings of the Courts of Appeals. To attempt by delving into the transcripts or files sent up by a Court of Appeals under an order of the Supreme Court in a certiorari proceeding to determine whether its ruling contravened a decision of this Court would simply constitute an arbitrary and unauthorized exercise of power; and would transform the proceeding into a review as upon appeal or writ or error from the Court of Appeals to the Supreme Court. Such a course would, in effect, destroy the final jurisdiction of the Courts of Appeals and render them simply intermediate appellate tribunals. No such result was contemplated in their creation; and countenance, even by implication, should not be given to an attempted usurpation of this clearly defined final jurisdiction.