HOMER STOGSDILL v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, a Corporation, Appellant.—85 S. W. (2d) 447.

Division One, July 9, 1935.

*J. W. Jamison* and *Phil M. Donnelly* for appellant.

*Sizer & Lockmiller* for respondent.

128

FERGUSON, C.—Plaintiff was employed by the defendant railway company as a laborer at defendant's "coal chutes" at Newburg, Missouri. At these "chutes" the storage bins for coal are elevated some sixty feet, or more, above the level of the ground and the adjacent railroad tracks. Defendant's locomotive engines, engaged in both intrastate and interstate traffic, are supplied with coal at these "chutes." The coal in the storage bins is conveyed, "by gravity," from the bins to the engines through "a coal chute apron." The evidence does not disclose that it was any part of plaintiff's duties to assist in, or that he had anything to do with, the "coaling" of the engines. Coal is elevated and "dumped" into the storage bins or chutes by means of a "hoist" by which a "bucket," which "holds about two tons of coal," is raised and lowered. The "bucket" is "automatically loaded with coal" at the bottom of the shaft, in which it operates, and when raised to the top of the shaft "automatically dumps" the coal into the storage bins. "A large coal oil engine, installed nearby, connected by belts and pulleys with the hoist" supplies the motive power for operation of the hoist machinery. One, Borders was the foreman "in charge of the coal chutes." According to plaintiff's evidence, on the morning of September 7, 1929, Borders, the foreman, ordered plaintiff to "oil the slides and wheels or rollers" of the hoist and, while plaintiff was so engaged Borders started the hoist machinery in operation and plaintiff was injured. Plaintiff's injuries consisted of the loss of part of each of the fingers of his right hand and a part of the thumb and two fingers of the left hand. He brought this action, for damages for the injuries so received, under the Federal Employers' Liability Act. On a trial in the Circuit Court of Webster County plaintiff had verdict and judgment for $15,000. On October 1, 1930, defendant's motion for new trial was overruled, its affidavit for an appeal filed and an order granting defendant an appeal to this court entered.

Under Section 1027, Revised Statutes 1929, the appeal was returnable to the then April Term, 1931, of this court and Section 1028, Revised Statutes 1929, requires that "in cases of appeals," "appellant . . . shall cause to be filed in the office of the proper appellate court . . . fifteen days before the first day of the term of such court, . . . a perfect transcript of the record and proceedings in the cause, or, in lieu of such transcript, a certified copy of the record entry of the judgment, order or decree appealed

from in said cause, showing the term and day of the term, month and year upon which the same shall have been rendered, together with the order granting the appeal.'' Though as stated the appeal was returnable to our then April Term, 1931, appellant did not file, or cause to be filed, fifteen days before that term, as required by Section 1028, supra, either the transcript or certificate therein mentioned. Appellant caused a bill of exceptions to be prepared and submitted it to plaintiff's attorneys, Sizer and Gardner, who approved same whereupon appellant filed its bill of exceptions in the office of the clerk of the Circuit Court of Webster County on March 1, 1932. Neither the transcript nor the certificate mentioned in Section 1028 had been filed in this court but thereafter and on March 10, 1932, appellant filed here a certified copy of the judgment appealed from ''together with the order granting the appeal'' which certificate set out all the things required by Section 1028 to be shown. The April Term, 1931, of this court convened April 14, therefore March 30, 1931, was the last date for timely filing the certificate but having failed to do so appellant was thereupon in default. Section 1027 provides: ''The appellant shall perfect his appeal in the manner and within the time prescribed in the next succeeding section (Sec. 1028, supra), and if he fails so to do, and the respondent shall produce in court the certificate of the clerk of the court in which such appeal was granted, stating therein the title of the cause, the date and amount of the judgment appealed from, against whom the same was rendered, the name of the party in whose favor the appeal was granted and the time when the appeal was granted, such certificate shall be prima facie evidence of the matters therein stated, and shall be a sufficient basis for a motion in the appellate court to affirm the judgment so appealed from, and the court shall affirm the judgment, unless good cause to the contrary be shown; and the failure of the clerk to notify the appellant, or his attorney of record, of the completion of the transcript in time to enable him to have the same filed in the appellate court in the time required by law, shall be considered and is hereby declared to be good cause for refusing to affirm the judgment of the lower court on such motion.'' Though appellant did not file the certificate here until March 10, 1932, more than eleven months after the last date, fixed by statute, that it should have been filed plaintiff did not during that interim elect to avail himself of the right given him to ''produce'' here the certificate mentioned in Section 1027 and file a motion to affirm and during that period examined and approved the bill of exceptions which appellant in the meantime prepared and submitted. The appeal was docketed for hearing in Division One for the September Term, 1933, and during the last week of the January, 1934, call thereof. On October 30, 1933, Division One ordered all cases set for the last week of the January, 1934, call of the September, 1933,

term continued to the May Term, 1934, which order, included this case. However, at the May Term, 1934, cases in Division One were set for five days only and all other cases originally set for that term were by order of that division, including this case, continued to the September Term, 1934. Plaintiff did not during all this time file a motion to affirm. Appellant commenced the preparation of its abstract of the record and brief intending to serve and file same for the September, 1934, term to which the case had been finally continued. Our Rule 11 requires that, "Where the appellant shall, under the provisions of Section 1028, . . . file a copy of the judgment . . . in lieu of a complete transcript, he shall deliver to the respondent a copy of his abstract at least thirty days before the cause is set for hearing, and in a like time file ten copies thereof with our clerk," and Rule 15 requires that "appellant shall deliver to the respondent a copy of his brief thirty days before the day on which the cause is set for hearing." Our September Term, 1934, commenced September 4, 1934, and this case was set for hearing on September 11, therefore appellant should have delivered copy of his abstract and brief to respondent not later than August 12. However, during July, 1934, one of plaintiff's attorneys and defendant's (appellant's) claim agent engaged in negotiations looking to a compromise or settlement. Appellant's claim agent told plaintiff's attorney that appellant's attorney was then engaged in the preparation of its abstract and brief. Later and under date of July 27, plaintiff's attorney wrote a letter to appellant's counsel in which he mentioned the conversations with appellant's claim agent and said that the claim agent had advised him that, "you are in the preparation of your brief and if the case could be settled for a reasonable amount we could obviate a lot of work. The only serious question in this case is whether plaintiff's work was interstate and I admit that is a question which is fraught with danger from plaintiff's standpoint in view of the recent decisions of the Supreme Court of the United States, and to save this case from a remand will require very careful briefing, if it can be done at all." It is then stated that, "I think with your recommendation we can possibly settle this case;" that the claim agent had offered $500 "but I told him that would not even pay my expenses . . . but if he would pay $1000 I believe I could get it through. At least I would try to do so. In view of the amount of the judgment . . . even through a chance for affirmance is somewhat doubtful I think this would indeed be a very nominal settlement." Upon receipt of this letter appellant's attorney got in touch with the writer thereof, made the recommendation requested and an oral agreement was entered into between the two attorneys that appellant's attorney withhold the completion and printing of appellant's abstract and brief pending the acceptance or rejection by plaintiff of the recommended settle-

ment and that if this should so delay the completion of the abstract and brief that appellant could not file and serve same, in the event the recommended settlement was not made, within the time required by our rules, supra, then respondent would waive the failure to make timely service and no "advantage of that would be taken" and a like agreement was had as to the filing and service of respondent's reply brief. Plaintiff resided at Newburg, his attorneys at Monett, the offices of appellant's claim department were at Springfield, appellant's attorney in charge of this case resided at Lebanon and the general offices of appellant's law department were in St. Louis. Therefore after appellant's attorney in charge of the case recommended the amount suggested by plaintiff's attorney as a settlement considerable time elapsed during which the negotiations were in progress finally resulting in the rejection by plaintiff of the proposed settlement. Thereupon appellant's attorney completed its abstract and brief and caused same to be printed, served and filed. The abstract and brief were delivered to, and service thereof acknowledged by, respondent's attorneys on August 23 and filed here August 27, 1934, the service being eleven days and the filing fifteen days late. In the acknowledgment of plaintiff's attorney, by letter to appellant's attorney, of the receipt of the abstract and brief no objection or complaint was made as to the delayed service.

Appellant's appeal had been on the docket of this court for a year and had been finally set for hearing on September 11, 1934, as noted supra; approximately three years and five months had passed since the last date, fixed by statute, that it should have been filed and at which time plaintiff's right to file the certificate and motion to affirm under the provisions of Section 1027, supra, accrued; after that date and before filing the certificate of appeal appellant had caused a bill of exceptions to be prepared and same had been examined and approved by plaintiff's attorneys; after the filing of the statutory certificate of appeal appellant at considerable expense had caused its abstract of the record and brief to be prepared, printed, served and filed and during that interim had accepted respondent's offer to negotiate looking to a compromise and had accepted and offered to pay the amount by way of compromise settlement which plaintiff's attorney had tentatively proposed and yet during all such period of time plaintiff withheld, neglected and failed to file a motion to affirm under said Section 1027 and allowed five regular terms of court, as well as the call terms intervening, to pass without filing same. But on September 7, 1934, four days before the date the case was set for hearing here, having notified appellant's attorney by telegram, of date of September 4, of intention to do so, plaintiff filed the certificate mentioned in said Section 1027 and a motion to affirm the judgment based thereon also a separate motion to dismiss the appeal. Plaintiff conceding that, on the merits the judg-

ment cannot be sustained refused to file a brief in reply to appellant's brief and elects to stand or fall on the motions, which he has briefed.

Invoking the provisions of sections 1027 and 1028, supra, the motion to affirm seeks to have the judgment *nisi* affirmed because "appellant failed to perfect its appeal herein within the time prescribed by law" specifying that appellant did not comply with the requirements of said sections 1027 and 1028. The motion to dismiss the appeal is on the ground that "appellant failed to comply with the" rules of this court "governing the service of abstracts of the record and briefs on opposing counsel."

The motion to affirm requires our first consideration. We have quoted, supra, the pertinent parts of Section 1027 and by reference thereto it will be noted that said section provides that if the appellant fails to "perfect his appeal in the manner and within the time prescribed" by Section 1028 and respondent files the certificate mentioned therein and a motion to affirm based thereon that the appellate court "shall affirm the judgment, unless good cause to the contrary be shown." Appellant here as "good cause" why the motion to affirm should not be sustained first sets up, and verifies by affidavit, that "it is and has been the practice in the circuit court of Webster County" upon which the "attorneys including the attorney for appellant" rely that "when all steps had been taken by an appellant to perfect an appeal" the clerk of the circuit court would timely forward the certificate, allowed by Section 1028, in lieu of "a perfect transcript," to the clerk of, and timely file same in, the proper appellate court and "that if this is not done the clerk of the circuit court" would "notify appellant's attorney that the transcript of the appeal had not been completed or had not been filed;" that in this instance appellant's attorney paid the docket fee (when, not stated) and "did all things necessary to be done in perfecting" the appeal (a conclusion); that appellant and its attorney relied upon the practice or custom aforesaid; that appellant "received no notice from the circuit clerk advising appellant or its attorney of record that the appeal had not been filed;" and that "through an oversight or inadvertance" the clerk of the circuit court "overlooked" the timely filing of said appeal. The foregoing facts, as stated by appellant, do not constitute a showing of "good cause" or excuse for failure to file the appeal within the time required by statute. The statute (Sec. 1028) says, "The appellant . . . shall cause to be filed in the office of the proper appellate court," within the specified time, either the "perfect transcript" or the certificate mentioned in lieu thereof. Taking the facts in the light most favorable to appellant and assuming, though it is nowhere so stated, that it paid the docket fee in ample time to thereafter allow the filing of the certificate here within the statutory time

nevertheless it had no right to rely upon the alleged custom or attempt to shift the duty or responsibility upon the clerk of the circuit court to file same in this court. "This court has repeatedly held that that duty rests upon the appellant and that he cannot shift it upon the clerk." [State ex rel. Gilman v. Robertson (en banc), 264 Mo. 661, 175 S. W. 610, and cases there cited.] Appellant cites Reeves v. Green, 282 Mo. 521, 222 S. W. 795. In that case the certified copy of the judgment, etc., was filed after expiration of the statutory time. Against respondent's motion to affirm appellant filed "an affidavit showing that he had directed the circuit clerk to make out and forward a transcript of the judgment (presumably within the statutory time) and had paid the docket fee . . . and thought the clerk had attended to the matter." State ex rel. Gilman v. Robertson, supra, and the cases there cited are not referred to, nor are any cases cited, but this court disposed of the motion by merely saying, "under our statute, appellant made a good showing as against the motion to affirm the judgment." However, if what is there said be followed nevertheless appellant's affidavit herein does not show a comparable state of facts. It is nowhere stated that appellant's attorney timely paid the docket fee and ordered and directed the clerk of the circuit court to prepare and forward the certificate. We are, however, constrained to follow and reiterate, the rule declared in Gilman v. Robertson, supra. Speaking of the certified copy of the judgment and order granting the appeal (commonly referred to as the short form of appeal), which Section 1208 allows to be filed in lieu of a perfect transcript," as a transcript, the Springfield Court of Appeals said in Lasswell Land & Lumber Co. v. Langdon (Mo. App.), 204 S. W. 812: "While it is the clerk's duty to make the transcript for the appellant on request and payment of proper fees, yet it is appellant's broad duty to cause same to be filed in the proper appellate court in the proper time. . . . The clerk has no duty to perform, except to make the transcript at appellant's request, and appellant must use diligence in having this done and having it filed in time. He cannot cast this duty on the clerk. [State ex rel. v. Robertson, 264 Mo. 661, 175 S. W. 610.] To make a certified copy of the judgment and order granting appeal—all that is required to perfect the appeal—seldom takes more than a few hours' work of the clerk, and seldom will the clerk be found at fault in this respect if due diligence is exercised by the appellant."

Appellant next sets up not as an excuse for its delinquency in filing its appeal but as cause why the motion to affirm should be overruled that the course pursued by respondent herein amounts to and should be held, under the facts and circumstances, to be a waiver, by him, of the right and benefit conferred by Section 1027 to have the judgment affirmed upon appellant's failure to file the appeal

within the time fixed by statute. As opposed to this contention plaintiff cites and relies upon the *Per Curiam* opinion of Division One of this court in Ziefle v. Seid, 137 Mo. 538, 38 S. W. 963, decided October Term, 1896. In that case the appeal was returnable to the April Term, 1895, but certified copy of the judgment and order granting the appeal was not filed here until August 29, 1895. On November 18, 1896, appellant's abstract of the record was served on respondent. On December 15, 1896, respondent filed a motion to affirm the judgment because of appellant's failure to file the appeal within the time prescribed by statute. The motion to affirm was first overruled but a rehearing was granted and the motion sustained. The opinion states the situation thus: "The plaintiff's counsel, with entire frankness, admit that 'the appeal should have been perfected by transcript at the April Term,' 1895, and assign as cause for the delay 'press of business,' conceding 'legal negligence' in that matter. But they resist the motion to affirm because not brought on until after the case was set for hearing and appellants had gone to the expense of preparing and printing abstracts and briefs, and of filing them in court." It is then said: "The substance of plaintiff's claim is that defendant, respondent, should have moved more promptly for the affirmance and that having failed to do so . . . the court should not now favorably entertain the pending motion. . . . It is admitted that no good cause has been given for the failure to file in due time the transcript (or, in this instance, the certificate). But it certainly would be 'good cause' against affirmance if a waiver, in respect of the matter of time, was shown. The question here is whether the facts aforesaid establish any waiver. We do not regard the omission to move for an affirmance, until the hearing is near at hand, as constituting, of itself, a ground to deny such a motion. . . . There is nothing in the Missouri law to suggest that delay in moving for the affirmance will cure delay of the appellant in following the requirements" of the statute. "No doubt, parties may (to some extent and in some circumstances) waive the advantages of the statute. But we hold that lapse of time alone does not avert all statutory consequences of a delay by the appellant. It is against just such delay that the statute is aimed." Clearly the purpose of Section 1027 is to expedite appeals and the disposition thereof. It provides a method whereby, if the appellant, without good cause, delays and fails to timely file his appeal in the proper appellate court respondent may have the litigation terminated and have the appeal disposed of by an affirmance. Thus an appellant cannot, except at the risk of an affirmance, withhold the filing of his appeal, hold the judgment in abeyance and prolong or defer the final disposition of the cause. Primarily the statute is for the benefit and protection of the respondent and in Ziefle v. Seid, supra, the court says that, "No doubt . . . in

some circumstances the advantages of the statute'' may be waived. However, in that case it seems to have been the opinion of the court that the facts there stated were not sufficient to constitute a waiver though the real holding is confined to the proposition "that lapse of time alone does not avert all the statutory consequences of a delay by appellant.'' Without referring to the Ziefle case one of our courts of appeals, in much later opinions, has held upon a state of facts similar to that in the instant case that the respondent waived appellant's delay in filing the appeal and on that ground overruled appellant's motion to affirm. In Swartz v. Hiler (Mo. App.), 207 S. W. 258, the Springfield Court of Appeals, ruling respondent's motion to affirm, says: "But though appellant be in default we do not believe that respondent is in a position to invoke the penalty provided for failure to file here certified copy of judgment and order granting appeal in time. . . . Respondent made no attempt to invoke the penalty for failure until after appellant had gone to the expense and trouble to prepare his abstract of the record and briefs. Respondent knew, or could easily have ascertained, that appellant had not prosecuted his appeal with due diligence as provided by law, yet, notwithstanding this knowledge, respondent stood by and permitted appellant to prepare and serve the abstract and his briefs before he made any move to invoke the penalty for failure. We think respondent comes too late.'' In Mathewson v. Larson-Meyers Co. (Mo. App.), 209 S. W. 294, the same court, ruling respondent's motion to affirm filed under the provisions of our present Section 1027, says: "Although the appeal was returnable to the October Term, 1917, and was not lodged in this court for a year thereafter, the respondent took no steps to have the judgment affirmed till he filed such motion on October 29, 1918. At that time the appellant had filed his abstract of the record and his statement and brief. . . . We must overrule the motion to affirm the judgment. If appellant was in default without cause either at the October Term, 1917, or the March Term, 1918, or the October Term, 1918, of this court . . . and plaintiff wished to try out such question of default without cause, then he should have filed a timely motion to affirm with the clerk's certificate as required by Section 2047, Revised Statutes 1909. The respondent will not be allowed to stand by and take no action to have the judgment affirmed in case of default by the appellant till the appellant has perfected his appeal and incurred the expense of printing abstracts and briefs and then ask affirmance.'' [See, also, opinion of St. Louis Court of Appeals in Gaar-Scott & Co. v. Nelson, 166 Mo. App. 51, 148 S. W. 417.]

Subscribing fully to the primary proposition announced in the Ziefle case, supra, that "lapse of time *alone*" (italics ours) does not afford ground for overruling the motion to affirm yet we are impressed with the correctness of the holding of the Court of Appeals,

supra, upon a state of facts such as exists in the instant case. We shall not further prolong the discussion of this matter by here again reviewing and commenting on the facts. We have set the facts out in fullest detail, supra, and there summarized and commented thereon. Respondent here not only withheld his motion to affirm over a long period of time after the appellant was in default and did not file same until within four days of the date the cause was to be heard but by his course acquiesced in and permitted the appellant to proceed and the cause to continue from term to term in this court as if the question were not to be raised and stood by permitting appellant to prepare and file its bill of exceptions and prepare, print, serve and file its abstract of record and briefs. Respondent did not elect to timely avail himself of the benefits and advantages offered to him by the statute or invoke the statute for the purpose it is intended to serve and therefore under the facts here we are constrained to overrule his motion to affirm on the ground that at the time same was filed respondent had waived his right to invoke the provisions of the statute upon which he relies.

We come now to the motion to dismiss the appeal for failure of appellant to comply with our rules governing the service and filing of the abstract and briefs. We have stated, supra, the facts bearing upon this matter as shown by affidavits filed by appellants. The affidavits show that an agreement was had with plaintiff's attorney of record whereby the delay was waived. It appears that appellant's attorney was approached by plaintiff's attorney in reference to making a proposed recommendation for a compromise settlement; that it was then agreed between the attorney for plaintiff and appellant's attorney that in the event the recommended compromise was not effected that no question would be made or "advantage taken" of any delay in the service of appellant's abstract and brief occasioned by appellant withholding the completion and printing thereof pending the outcome of the negotiations; and that the prolongation of the negotiations caused the delay in printing and serving the abstract and brief. The affidavits filed by appellant stand uncontradicted and we therefore overrule the motion to dismiss.

This brings us to the merits of the case. We have heretofore stated briefly the nature of the work in which plaintiff was engaged at the time he was injured. He was a laborer at the defendant's coal chutes. He did such work thereabout in connection with the care, maintenance and operation of the machinery and in the unloading of coal delivered there for storage as directed by his foreman. He oiled certain parts of the hoist machinery from time to time as ordered by the foreman, Borders, and was so engaged when injured. Appellant contends that its instruction in the nature of a demurrer to the evidence and directing a verdict in its favor offered

at the close of all the evidence in the case should have been given and assigns the refusal thereof as error. Plaintiff invoked, and sought to bring himself within, the Federal Employers' Liability Act but appellant submits here that it appears from the evidence, as a matter of law, that plaintiff was not at the time he was injured engaged in interstate commerce so as to come within the provisions of that act. The Federal Employers' Liability Act declares that "every common carrier by railroad while engaged in commerce between any of the several states . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative," etc., if the injury results in whole or in part from the negligence of the carrier or any of its officers, agents or employees. In the application of the act we are bound by and follow the decisions of the Supreme Court of the United States and the test by which its applicability is to be determined is announced in Shanks v. Delaware, Lackawanna & Western Railroad Co., 239 U. S. 556, 36 Sup. Ct. 188, 60 L. Ed. 436, L. R. A. 1916C, 797 (January, 1916). Shanks was employed in the defendant's repair shop. At the time of his injury he was engaged in moving an overhead shaft through which power was communicated to machinery used in repair work. The Supreme Court of the United States said: "It is essential to a right of recovery under the act not only that the carrier be engaged in interstate commerce at the time of the injury but also that the person suffering the injury be then employed by the carrier in such commerce. . . . The question for decision is, was Shanks at the time of the injury employed in interstate commerce within the meaning of the Employers' Liability Act? What his employment was on other occasions is immaterial, for . . . the act refers to the service being rendered when the injured was suffered. Having in mind the nature and usual course of the business to which the act relates and the evident purpose of Congress in adopting the act, we think it speaks of interstate commerce, not in a technical legal sense, but in a practical one better suited to the occasion (see Swift & Co. v. United States, 196 U. S. 375, 398, 25 Sup. Ct. 276, 49 L. Ed. 518, 525), and that *the true test of employment in such commerce in the sense intended is, was the employee, at the time of the injury, engaged in interstate transportation or in work so closely related to it as to be practically a part of it?* . . . Coming to apply the test to the case in hand, it is plain that Shanks was not employed in interstate transportation, or in repairing or keeping in usable condition a roadbed, bridge, engine, car or other instrument then in use in such transportation. What he was doing was altering the location of a fixture in a machine shop. The connection between the fixture and interstate transportation was remote at best, for the only function of the fixture

was to communicate power to machinery used in repairing parts of engines some of which were used in such transportation. This, we think, demonstrates that the work in which Shanks was engaged . . . was too remote from interstate transportation to be practically a part of it, and therefore that he was not employed in interstate commerce within the meaning of the Employers' Liability Act.'' (Italics ours.) The test so declared was followed and reaffirmed in Chicago, Burlington & Quincy Railroad Co. v. Harrington, 241 U. S. 177, 36 Sup. Ct. 517, 60 L. Ed. 941 (May, 1916). In that case the injured employee was engaged in taking coal from storage tracks to bins or chutes for the use of locomotives used in the movement of interstate and intrastate traffic. After quoting the rule of the Shanks case for determining whether an employee is engaged in interstate commerce it is said: "Manifestly, there was no such close or direct relation to interstate transportation in the taking of the coal to the coal chutes. This was nothing more than the putting of the coal supply in a convenient place from which it could be taken as required for use.'' The court held the service was not in interstate commerce. In May, 1920, the Federal Supreme Court ruled two cases, Erie Railroad Company v. Collins, 253 U. S. 77, 40 Sup. Ct. 450, 64 L. Ed. 790, and Erie Railroad Company v. Szary, 253 U. S. 86, 40 Sup. Ct. 454, 64 L. Ed. 794, in which the test or rule announced in the Shanks case, and reaffirmed in the Harrington case, was not followed. In the Collins case, the employee, at the time of the injury, was operating a gasoline engine to pump water into a tank for the use of locomotives engaged in both interstate and intrastate commerce. In the Szary case the duty of the employee was to dry sand, by the applications of heat, for use of locomotives operating in both interstate and intrastate commerce. In each case it was held that the employer was, at the time of injury, engaged in interstate commerce within the terms of the Federal Employers' Liability Act. Later (November, 1931) in Chicago & Northwestern Ry. Co. v. Bolle, 284 U. S. 74, 52 Sup. Ct. 59, 76 L. Ed. 173, the Supreme Court of the United States again reaffirming and declaring the test laid down in the Shanks case observed: "The rule announced by the Shanks case has been categorically restated and applied in the following cases among others: Southern Pacific Co. v. Industrial Accident Commission, 251 U. S. 259, 263; Industrial Accident Commission v. Davis, 259 U. S. 182, 185; Baltimore & Ohio Southwestern Railroad Co. v. Burtch, 263 U. S. 540, 543. The applicable test thus firmly established is not to be shaken by the one or two decisions of this court where, inadvertently, the word 'commerce' has been employed instead of the word 'transportation.' '' Plainly the reference is to the Collins and Szary cases. In Chicago & Eastern Illinois Railroad Co. v. Industrial Commission of Illinois, 284 U. S. 296, 52 Sup. Ct. 151, 76 L. Ed.

304 (January, 1932), the Supreme Court of the United States says:
"From a reading of the opinion in the Collins case, it is apparent
that the test of the Shanks case was not followed . . . the words
'interstate commerce' being inadvertently substituted for the words
'interstate transportation.' The Szary case is subject to the same
criticism, since it simply followed the Collins case. Both cases are
out of harmony with the general current of the decisions of this
court since the Shanks case . . . and they are now definitely
overruled." In the last-mentioned case, Chicago & Eastern Illinois
Railroad Co. v. Industrial Commission of Illinois, "Thomas, an em-
ployee of the railroad company, in attempting to oil an electric motor
while it was running, was injured by having his hand caught in the
gears. The railroad was engaged in both intrastate and interstate
commerce. The motor furnished power for hoisting coal into a chute,
to be taken therefrom by, and for the use of, locomotive engines
principally employed in the movement of interstate freight." The
court quotes and applies the test prescribed in the Shanks case and
holds that the employee was not, at the time of injury, engaged in
interstate commerce within the meaning of that term as used in the
Federal Employers' Liability Act. [See Allen v. St. Louis-San
Francisco Ry. Co., 331 Mo. 461, 53 S. W. (2d) 884, where the
cases, above referred to, and others, are fully reviewed and dis-
cussed; also Cox v. Missouri Pacific Railroad Co., 332 Mo. 991, 61
S. W. (2d) 962; Middleton v. Southern Pac. Co., 61 Fed. (2d) 929;
Southern Ry. Co. v. O'Dell, 252 Fed. 540.] Under the correct and
applicable test plaintiff in the instant case was not engaged, at the
time he sustained the injury, in interstate commerce within the
meaning of the Federal Employers' Liability Act. Plaintiff's coun-
sel frankly concede that they relied, and that plaintiff's case rests,
upon the Collins and Szary cases, supra, and that upon the merits
the judgment cannot stand.

Following the decisions, supra, of the Supreme Court of the
United States, as we are bound to do, it is apparent that defendant's
instruction directing a verdict in its favor should have been given
and that the judgment must therefore be reversed. It is so ordered.
*Hyde* and *Bradley, CC.*, concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopt-
ed as the opinion of the court. All the judges concur, except *Coles,
J.*, not sitting.